UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JEAN SPANGLER ) | |
| ) | |
| V. ) | NO. 2:08-CV-234 |
| ) | |
| FREDERICK L. CONRAD, JR. ) | |

**MEMORANDUM OPINION AND ORDER**

This suit is premised on alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.

The defendant Conrad, an attorney in Knoxville, Tennessee, who devotes a large portion of his practice to debt collection, has filed a motion for summary judgment. (Doc. 15). Hereafter, the parties will be referred to by their names.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." The court must view the facts contained in the record, and all inferences that can be reasonably drawn from those facts, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Plott v. Gen. Motors Corp.*, 71 F.3d 1190 (6th Cir. 1995). The court may not weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in

dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity for a trial to resolve a material factual dispute. *Id*., at 322. A mere scintilla of evidence will not suffice. *Anderson*, 477 U.S. at 252. On the other hand, the party opposing a Rule 56 motion may not simply rest on the mere allegations or denials in his pleadings; rather, he must affirmatively present competent evidence sufficient to establish the existence of a genuine issue of material fact necessitating the trial of that issue. *Anderson*, 477 U.S. at 256.

The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

The dispositive facts are undisputed and, where appropriate, all inferences from those facts have been drawn in favor the non-moving party, Ms. Spangler. Those facts are as follows:

On November 28, 2001, Randall Singleton obtained a loan from First Tennessee Bank of Morristown, Tennessee in the amount of $1000.00. To obtain that loan, he paid a non-

refundable charge to the bank in the amount of $40.00. The interest rate was 4.62 percent per annum. The loan was to be repaid in one year; Singleton was to make twelve monthly payments in the amount of $88.85 each, for a total of $1,066.20. The first payment was due on December 28, 2001, and the last payment was payable on November 28, 2002.

The loan agreement additionally recited that the Annual Percentage Rate ("APR") was 12%.[1] It provided that the obligors would be required to pay all costs incurred by the bank to collect the balance owing on the note in the event of default, including "reasonable attorneys' fees." It also imposed a 5% fee on any payment 15 or more days overdue.

Jean Spangler co-signed that promissory note on behalf of Mr. Singleton.

First Tennessee Bank sold the promissory note to the Credit Bureau of North America, LLC, which later sold the note to First Investment Services, LLC.

Singleton made only one payment on the indebtedness. The amount of that payment is unclear. In the parties' statements of material fact, it is stated that Spangler acknowledged that the payment was in the amount of $88.85. But on the face of the note itself, someone has written that $181.20 was paid, and that $885.00 was charged off. Regardless, there is no dispute that, whatever the amount of the payment, it was made on February 19, 2002.

While Singleton's promissory note was held by Credit Bureau of North America, that

---

[1] An annual percentage rate takes into account not only the interest to be paid by the maker of the note, but also all costs incurred by him in obtaining the loan. In this case, Singleton was required to pay a $40.00 non-refundable loan charge. The 12% APR figure seemed so high in relation to the interest rate on this loan that the court first assumed that the APR number was incorrect. In fact, it is not incorrect.

company began efforts to collect the balance owing on the note from Ms. Spangler. In that regard, CBNA sent three letters to Ms. Spangler, each dated May 16, 2007, and each of which were identical except for the total amount claimed to be owing.[2] Each of these letters recited that the original balance owing was $885.25. The first letter recited that "interest and fees" in the amount of $728.26 was owing; the second letter recited that interest and fees had accumulated to $728.55; and the third letter indicated that $728.84 was owing for interest and fees. In similar fashion, the first letter indicated that the total balance owing was $1,613.51, whereas the last letter recited that the total amount owing was $1,614.09. *Each letter also stated, in bold-faced type, that the note was continuing to accrue interest at 12%*, which of course was the APR, not the interest rate.

Later, the note was referred to attorney Conrad for collection, at which time it was held by First Tennessee Services, LLC.

In August 2007, attorney Conrad's paralegal sent a letter to Mr. Spangler demanding payment of the note. The letter recited that the creditor was "1st Invst Ser/1st TN Bank"; that Conrad had been retained to collect the delinquent indebtedness; and that 1st Invst/Ser/1st TN Bank was owed $1762.09, which included $583.16 in accrued interest and $293.68 in attorneys' fees.

Attorney Conrad obtained the 12% interest rate figure from the note itself and the

---

[2]It is unclear whether these three letters, all dated May 16, 2007, were received simultaneously or, the identical date on each letter notwithstanding, they were received some time apart. Regardless, it is of no significance.

three demand letters sent to Ms. Spangler by CBNA. Similarly, his calculation of the interest owing was based on that 12% figure.[3]

Some time after Conrad sent his letter to Ms. Spangler, he realized that the 12% interest rate figure in the CBNA letters, and in his letter, was incorrect, and he so acknowledged to Ms. Spangler's counsel.[4]

On January 31, 2008, Conrad filed a civil warrant against Ms. Spangler in the General Sessions Court for Hamblen County, Tennessee, on behalf of "First Investment Services/First Tennessee Bank c/o Frederick L. Conrad, Jr." The warrant requested judgment in the amount of $1420.48, "plus interest and attorneys' fees."

Ms. Spangler claims that attorney Conrad violated the Fair Debt Collection Practices Act in the following ways:

(1) That Conrad's August 16, 2007 letter to Ms. Spangler was a "communication" in an attempt to collect the debt under 15 U.S.C. § 1692(a)(2); and in that letter

(a) Conrad's reference to "1st Inv Serv/1st TN Bank" was a statement intended to confuse Ms. Spangler as to who actually was the true owner of the debt in violation of § 1692g(a); and

(b) the amount of interest stated therein ($583.16) was incorrect, and Conrad either willfully or negligently failed to make a reasonable investigation as to the correct

---

[3]Conrad's Affidavit, Doc. 17-1.

[4] *Id*.

amount before sending out his letter to Ms. Spangler in violation of § 1692e(2)(A); and

(c) the amount stated therein for attorneys' fees was incorrect inasmuch as no court had yet awarded any attorneys' fees in violation of § 1692e(2), (5), (10), and § 1692f(1); and

(2) The civil warrant prepared and filed by attorney Conrad:

(a) was an attempt to collect a debt that was time-barred by Tennessee's six-year statute of limitations in violation of § 1692e and § 1692f, and

(b) falsely stated in a "Sworn Account" attached to the warrant that the total amount of indebtedness owing on the note was $1420.48 in violation of § 1692e and § 1692f.

***CONRAD'S REFERENCE TO "1ST INVST SER/1ST TN BANK" WAS A STATEMENT INTENDED TO CONFUSE MS. SPANGLER.***

Section 1692g(a)(2) requires the debt collector to notify the debtor of "the name of the creditor to whom the debt is owed." Ms. Spangler points out that the letter she received from attorney Conrad (and, for that matter, the civil warrant served upon her) listed the creditors' name as "1st Invst Ser/1st TN Bank" which was false inasmuch as First Tennessee Bank did not have an ownership interest in the debt at the time Conrad sent his letter to Ms. Spangler. Ms. Spangler argues that this was confusing under the "least sophisticated consumer test" adopted by the Sixth Circuit in *Kistner v. Law Offices of Michael Margelefsky, LLC*, 518 F.3d 433 (6th Cir. 2008).

If Ms. Spangler's argument is accepted, then attorney Conrad should have listed only First Tennessee Investment Services as the creditor, and that indeed would have been

confusing to any consumer, sophisticated or not, since Ms. Spangler (and Mr. Singleton) had dealt only with First Tennessee Bank. Including a reference to First Tennessee Bank more clearly identified the obligation upon which demand was being made. Without that information, it was even more likely that Ms. Spangler would have been confused. Including a reference to First Tennessee Bank was not violative of § 1692g(a)(2) under these circumstances.

### *THE AMOUNT OF INTEREST STATED IN CONRAD'S DEMAND LETTER ($583.16) WAS INCORRECT, AND HE WILLFULLY OR NEGLIGENTLY FAILED TO MAKE A REASONABLE INVESTIGATION AS TO THE CORRECT AMOUNT BEFORE SENDING HIS DEMAND LETTER TO MS. SPANGLER*

Whether the $583.16 figure for interest was correct or incorrect is not the dispositive question; that issue was or will be resolved by the state court. If Ms. Spangler's theory is adopted by this court, then miscalculating the interest by so much as one dollar could result in an imposition of damages under the FDCPA. If the amount of interest was incorrect, which is by no means a certainty, it was not so far beyond the pale that the miscalculation should subject attorney Conrad to liability under the act. Further, as discussed hereafter, a representative of First Investment Services (and First Tennessee Bank?) swore under oath that the amount of the total indebtedness was $1,420.00. If the remaining principal balance of $885.00 is subtracted from that amount, the resulting figure is $535.00, close enough to the stated $583.16, bearing in mind the accumulation of interest over six years, not to mention the five percent monthly late payment fees.

## THE AMOUNT STATED IN CONRAD'S LETTER FOR ATTORNEYS' FEES WAS INCORRECT INASMUCH AS NO COURT HAD YET AWARDED ANY ATTORNEYS' FEES

To be sure, there was no liquidated amount of attorneys' fees. However, the loan agreement provided for "reasonable attorneys' fees" if collection efforts were necessary. Bearing in mind that the matter had been turned over to attorney Conrad for collection and he had expended time and effort, making a demand upon Ms. Spangler for payment of attorneys' fees was appropriate and not violative of § 1692e(2), or (5), or (10), or § 1692f(1). *See, Fields v. Wilber Law Firm*, 383 F.3d 562 (7th Cir. 2004).

## FILING SUIT ON A TIME-BARRED DEBT

Ms. Spangler claims that Conrad knowingly filed a suit that was barred by Tennessee's six-year statute of limitations, Tenn. Code Ann. § 28-3-109(3). It is Ms. Spangler's theory that the note went into default on January 28, 2002, and, since Conrad filed the civil warrant on January 31, 2008, the suit was filed three days too late.

Attorney Conrad points out that the primary obligor, Singleton, made a payment on February 19, 2002, as a result of which the six-year period began running anew on that date and would have expired no earlier than February 20, 2008.

In response, Ms. Spangler argues that a voluntary payment made after a default does not necessarily recommence the statute of limitations period, relying on *Hall v. Skidmore*, 171 S.W.2d 274 (1943).

It is virtually Hornbook law in this state that a voluntary payment made on a

promissory note after a default manifests "a willingness to pay" the debt which has the effect of re-starting the running of the statute of limitations:

> [I]n the absence of evidence to the contrary, we hold that [a payment on the debt] is an acknowledgment of the debt and implies a promise of payment which operates to keep the debt alive for the statutory period *from that time*.

*Graves v. Sawyer*, 588 S.W.2d 542, 544 (Tenn. 1979), (emphasis supplied).

*Graves* clearly puts the burden upon a debtor who is relying upon the expiration of the statute of limitations to show that his voluntary payment made after a previous default was not intended to be an acknowledgment of his "willingness to pay" which re-starts the running of the statute. Thus, it was Ms. Spangler's obligation to prove that Singleton's February 2002 payment was something other than voluntary and unconditional; it certainly was not attorney Conrad's obligation to divine in some fashion that it was otherwise before he filed his suit.

Spangler's counsel argues in his brief that *Graves* did not overturn the rule in *Hall*, but merely overruled the conclusion reached by the *Hall* court. Counsel's argument is somewhat confusing, but of one thing there is no doubt: *Graves* explicitly overruled *Hall*: "Cases holding [that a payment does not restart the statute], such as the *Skidmore* and *Coley* cases, are overruled." *Id*.

Presumptively, the six-year statute of limitations began running anew on February 19, 2002, the date Singleton made his one and only payment. As a result, attorney Conrad's suit

filed on January 31, 2008, was easily within the statute of limitations. In any event, the burden was upon Ms. Spangler to show otherwise.

## *THE "SWORN ACCOUNT" ATTACHED TO THE CIVIL WARRANT FALSELY STATED THAT THE AMOUNT OF THE INDEBTEDNESS OWED ON THE NOTE WAS $1420.48*

The Sworn Account was an affidavit executed by Bart Howard, who was an official of some sort with First Investment Services. Mr. Howard swore before a notary public that the amount owed by Ms. Spangler was $1420.48. Whether that figure is correct or not was or will be a matter for the Sessions Court Judge to determine. It certainly is not incumbent upon a debt collection attorney to essentially recalculate interest and fees claimed by his client before sending demand letters or filing suit. To so require would place an intolerable – indeed, likely an impossible – burden upon the attorney. Calculation of interest is not necessarily a simple, straightforward matter, and the FDCPA does not require a debt collection attorney to also be a certified public accountant. Assuming that attorney Conrad has approximately the same mathematical and accounting skills as this magistrate judge, he would "investigate" the total amount owing by calling or writing his client who has the skills (and computers) to do so. Here, Conrad already had the pertinent information from an individual who presumably had the means to calculate correctly the amount owing. A debt collection attorney should be allowed to confidently rely upon an affidavit of Sworn Account executed by his client that sets forth the total amount owed.

## *CONCLUSION*

Defendant's motion for summary judgment, (Doc. 15), is GRANTED. Plaintiff's suit is DISMISSED with prejudice.

SO ORDERED:

    s/ Dennis H. Inman
United States Magistrate Judge